IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS ROMERO OBLITAS,

                Plaintiff,

v.

COUNTY OF DANE,
DAVID KARLS, and
DAVID MAHONEY,

                Defendants.

OPINION and ORDER

24-cv-166-wmc

---

This employment discrimination case was originally filed by plaintiff Carlos Romero Oblitas ("Oblitas") in Dane County Circuit Court and removed to this court by defendants County of Dane ("Dane County"), former Lieutenant David Karls, and former Sheriff David Mahoney. (Dkt. #1.) After defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (dkt. #5), plaintiff filed a second amended complaint alleging racial discrimination and retaliation under 42 U.S.C. § 1981 in connection with employment as a Dane County Deputy Sheriff. (Dkt. #6.) Defendants have since renewed their motion to dismiss under Rule 12(b)(6), arguing that even this second amended complaint still fails to state a claim upon which relief may be granted. (Dkt. #10.) For the reasons explained below, defendants' motion will be granted, and the second amended complaint will be dismissed, although the court will grant plaintiff one final opportunity to amend.

ALLEGATIONS OF FACT[1]

**A. Background**

Oblitas has been employed as a Deputy Sheriff under a contract with Dane County since 2013. Born in Peru, Oblitas is a native Spanish speaker and identifies as "Latino, Hispanic, Peruvian, and non-White."

Until he retired in May 2021, defendant Mahoney was the Sheriff of Dane County, which is a "political corporation" or subdivision of the State of Wisconsin. *See* Wis. Stat. § 801.11(4)(a)(1). As Sheriff, Mahoney had "appointing authority" and was a "primary decisionmaker" at the Dane County Sheriff's Office. Until he also retired from the Dane County Sheriff's Office in May 2021, defendant Karls was known as the "Professional Standards Lieutenant," who recommended negative employment actions to Mahoney, including the termination of Oblitas's employment.

Deputy Sheriff Oblitas had a good employment record from the time he was hired in 2013, through early 2018. On February 5, 2018, Oblitas reported through proper chains of command that Deputy Sheriff Kristi Wiessinger, who is white, posted a racist photograph on her public Facebook page in violation of Dane County's anti-discrimination/harassment policy. As a result, Wiessinger received a written reprimand and was suspended from "Honor Guard Duties" for one week. During his investigation of

---

[1] Unless otherwise indicated, the facts in this section are taken from the allegations in plaintiff's second amended complaint (dkt. #6), and treated as true for purposes of deciding the defendants' motion to dismiss.

the matter, defendant Karls allegedly informed Wiessinger that Oblitas was the one who had reported her post.

Between late December 2018 and early January 2019, Deputy Sheriff Oblitas complained about a lack of racial diversity in hiring at the Dane County Sheriff's Office. Specifically, Oblitas complained that he had been unreasonably passed over for "desirable, Deputy-level positions that went to less senior and less experienced White deputies." According to Oblitas, Dane County employs several "Latin/Hispanic" deputies, but has never appointed a Latin/Hispanic applicant to a supervisory position of Sergeant or higher with the Dane County Sheriff's Office. On January 7, 2019, Oblitas shared his concern with Sheriff Mahoney that he was not getting the same opportunities for advancement as his "White, less experienced peers."

On May 14, 2020, Oblitas applied for promotion to Sergeant, which included completion of a competitive examination. Eight applicants, including Oblitas, successfully completed the eligibility process for promotion to Sergeant in 2020. All eight applicants except Oblitas were ultimately promoted, with Deputy Matthew Eorll being promoted to Deputy IV, and the remaining six applicants being promoted to Sergeant. In contrast, Oblitas remained unpromoted on the eligibility list, and he was the only applicant who had a known record of opposing racial discrimination in the workplace and the only one who identified as Latin/Hispanic.

3

### B. Events Leading to Plaintiff's Termination

On September 24, 2020, Deputy Eorll filed a complaint stemming from concerns expressed by a female deputy about "a specific male deputy possibly getting promoted," referencing Deputy Sheriff Oblitas. Lieutenant Karls allegedly began soliciting complaints about Oblitas from other female deputies, asking them to disclose any "sexually tinged comment or gesture" since he had been hired in 2013, and specifically sought out Deputy Sheriff Wiessinger to make a complaint, knowing that she harbored animosity towards Oblitas after he reported Wiessinger's racist Facebook post. Oblitas further contends that Karls would not have solicited complaints or concerns about his eligibility for promotion if he were white or had no history of complaining about racial discrimination.

On December 1, 2020, Deputy Sheriff Oblitas was terminated from his employment with the Dane County Sheriff's Office, allegedly "due to his race, and/or in the alternative, due to his protected complaints [about racial discrimination]." According to Oblitas, Dane County next offered pretextual reasons for his firing, by letter signed by then-Sheriff Mahoney, based on "sparse" and "stale" comments reported by Wiessinger and two of her friends, suggesting that Oblitas had violated the office's anti-discrimination/harassment policy.

### C. Reinstatement

On January 13, 2021, the Civil Service Commission concluded that the Dane County Sheriff's Office lacked just cause to terminate Oblitas and ordered him reinstated, with the condition that he complete a course of "sexual harassment prevention and professionalism training determined and provided by Dane County." After Karls and

4

Mahoney retired in May 2021, Oblitas remained on the eligibility list for promotion through September 10, 2021, but was never promoted. Instead, an unidentified "Defendant" promoted persons to Sergeant from a separate eligibility list to avoid promoting Oblitas allegedly because of his race and protected activity.

### D. Plaintiff's Claims and Procedural History

Deputy Sheriff Oblitas filed his original complaint in Dane County Circuit Court on November 30, 2023, alleging civil rights claims for racial discrimination and retaliation in violation of 42 U.S.C. § 1981 against the then-sole defendant Dane County. (Dkt. #3-1, ¶¶ 1, 31-41.) On February 23, 2024, Oblitas filed his first amended complaint against Dane County, which added claims against defendants Mahoney and Karls in their individual capacity for racial discrimination and retaliation in violation of both 42 U.S.C. §§ 1981 and 1983. (Dkt. #3-2, ¶¶ 2-4, 55-56.)

After removing the case to this court, defendants Dane County, Mahoney, and Karls filed a motion to dismiss the first amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #4.) Specifically, defendants argued that: (1) the first amended complaint failed to state a claim upon which relief may be granted against any of the defendants under § 1981; and (2) the § 1983 claims against defendants Mahoney and Karls, which only reference actions taken by them in December 2020 or before, were barred by the governing three-year statute of limitations. (Dkt. #5, at 9-13.)

In response to the motion to dismiss, Oblitas filed a second amended complaint, withdrawing any claims under § 1983 and proceeding against all defendants solely under

§ 1981. (Dkt. #6, ¶¶ 52-55.) In this operative pleading, Oblitas claims that the Dane County Sheriff's Office "either tolerates or applies progressive discipline to" white employees who violate the anti-discrimination/harassment policy and employees with no history of opposing racial discrimination. (*Id.* at ¶ 35.) Oblitas also claims that, but for his race or protected activity, he would have been granted the promotion to Sergeant for which he was qualified and certified. (*Id.* at ¶ 42.) Oblitas contends further that defendant Mahoney would have promoted him, but for his race or history of protected activity, but he was influenced by defendant Karls in both the decision not to promote him to Sergeant and to terminate plaintiff without just cause in December 2020. (*Id.* at ¶¶ 47-48.) By failing to promote and then terminating him in this manner, Oblitas also now claims that an unspecified "Defendant" violated policies on Equal Employment Opportunity and Affirmative Action. (*Id.* at ¶ 49.) Thus, he accuses "All Defendants" of discrimination (count one) and retaliation (count two) in violation of § 1981. (*Id.* at ¶¶ 52-55.)

OPINION

The defendants have moved to dismiss plaintiff's second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that 42 U.S.C. § 1981 does not afford a cause of action against them.[2] (Dkt. #11.) To survive

---

[2] As in their previous motion to dismiss (dkt. #5, at 7-9), defendants also argue that several of plaintiff's allegations are "vague" because they only refer to an unidentified defendant as the party responsible for discriminatory action without specifically indicating and providing notice as to which of the defendants were allegedly at fault. (Dkt. #11, at 4-5) (referencing Dkt. #6, ¶¶ 46, 49-50.) "Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct," are insufficient. *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Defendants argue further that plaintiff

6

a Rule 12(b)(6) motion to dismiss, a plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). However, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

I. Claims Under 42 U.S.C. § 1981

Here, plaintiff alleges that defendants violated his rights under 42 U.S.C. § 1981 by failing to promote him and subjecting him to wrongful termination without just cause on account of his race and protected activity opposing racial discrimination. Originally adopted as part of the Civil Rights Act of 1866, the current version of § 1981 was last

---

improperly attributes discriminatory actions to the Dane County Sheriff's Office, which is *not* plaintiff's legal employer nor a separate legal entity subject to suit. (Dkt. #11, at 5) (referencing Dkt. #6, ¶ 35.) Defendants' arguments are well taken but, as plaintiff correctly notes, these are deficiencies that could be remedied by granting leave to file another amended complaint and are not, standing alone, a basis for dismissal. Having said that, plaintiff must correct these deficiencies should he attempt to file any further amended complaints in this case.

7

amended in 1991, and guarantees that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Stated simply, "section 1981 prohibits race discrimination in the making and enforcing of contracts." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). To prevail on a claim under § 1981, therefore, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African-Owned Media*, 589 U.S. 327, 341 (2020).

Importantly, however, liability under § 1981 is limited to rectifying violations by *private* actors. The United States Supreme Court has clarified that "the express 'action at law' provided by [42 U.S.C.] § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a *state* actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1999).[3] The limitation on bringing actions under § 1981 applies both to state entities *and* any individuals working for them. *See Gress v. Regional Transp. Auth.*, No. 17C806, 2024 WL 245185, at *5 (N.D. Ill. Jan. 23, 2024) (citing *Jett*, 491 U.S. at 707, which held that a § 1981 claim could not proceed against a public school principal); *Outley v. City of Chicago*, 407 F. Supp. 3d 752, 762-63 (N.D. Ill. 2019) (holding that plaintiff could not state a § 1981 claim against state employees, even by suing them in their individual capacities).

---

[3] To prevail on a claim under § 1983, a plaintiff must demonstrate that "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Defendants Karls and Mahoney are alleged to have violated plaintiff's rights while "acting within the scope of [their] employment and under the color of law." (Dkt. #6, ¶¶ 5-6.) Because plaintiff does not dispute that Karls and Mahoney were *state* actors, "[t]he explicit remedial provisions of § 1983" are controlling. *Jett*, 491 U.S. at 731; *see also Campbell v. Forest Preserve Dist. of Cook Cty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014) (joining six other circuits and holding as a matter of first impression that *Jett* remains good law following 1991 amendments to § 1981 "and, consequently, § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors"); *Omachonu v. Shields*, No. 15-cv-69-wmc, 2015 WL 4509146, at *3-4 (W.D. Wis. July 24, 2015) (same). Likewise, a municipality such as Dane County cannot be held liable for its employees' violations of § 1981 under a theory of *respondeat superior*, but is subject to liability only under § 1983 for violations caused by a municipal custom or policy within the meaning of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).[4] *Jett*, 491 U.S. at 735-36. As a result, plaintiff fails to state a claim under § 1981 upon which relief may be granted against the defendants.

## II.   Withdrawn Claims Under 42 U.S.C. § 1983

Perhaps recognizing that he cannot make a claim against the defendants under § 1981, plaintiff attempts to resuscitate his claims against defendants Mahoney and Karls

---

[4] In support of his discrimination claim, plaintiff alleges that the "Dane County Sheriff's Office" treats white employees who engage in violations of its "harassment/ discrimination policy" more favorably than he was treated (Dkt. #6, ¶ 35), but he has not expressly raised a claim against Dane County under *Monell*. (*see id.* at ¶¶ 52-55.)

under § 1983, without expressly repleading those claims. (Dkt. #16, at 5, 12-13.) To the contrary, as noted above, plaintiff intentionally withdrew his § 1983 claims by removing them from his second amended complaint, which he filed after the defendants moved to dismiss those claims as barred by the applicable three-year statute of limitations. (Dkt. #5, at 12-13.) Defendants argued, and the record confirms, that plaintiff did not raise § 1983 claims or add Karls and Mahoney as defendants until he filed his first amended complaint on February 23, 2024 (dkt. #3-2), but the last specific activity attributed to either of those individuals occurred in December 2020, which is outside the three-year limitations period. (*See id.* dkt. #3-2, at ¶¶ 36, 40.) The Seventh Circuit has held that a party's failure to respond to a non-frivolous argument permits an inference of acquiescence, which operates as a waiver. *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001); *see also Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (holding that a party's failure to offer any opposition to a statute of limitations argument constituted a waiver). Similarly, plaintiff's failure to respond to the arguments raised in defendants' previous motion to dismiss "'was clearly a strategic decision rather than a mere oversight,'" *Schumacher v. Swiss Colony, Inc.*, No. 06-C047-bbc, 2007 WL 5515308, at *3 (W.D. Wis. March 19, 2007) (quoting *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001)), and plaintiff has therefore waived any argument that his § 1983 claims were timely filed.

Moreover, even if not waived, plaintiff still fails to show that any § 1983 claims asserted in his first amended complaint were timely presented. Specifically, because § 1983 has no statute of limitations, federal courts use the limitations period governing personal

injury actions in the state where the injury took place, *Wallace v. Kato*, 549 U.S. 384, 387 (2007), and as defendants previously pointed out, Wisconsin has a three-year personal injury statute of limitations. Wis. Stat. § 893.53. Further, a § 1983 claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Here, plaintiff's allegations against defendants Mahoney and Karls accrued -- at the latest -- when he was terminated in December 2020, and the statute of limitations expired three years later in December 2023, but plaintiff's first amended complaint lodging § 1983 claims against Mahoney and Karls was not filed until February 23, 2024, making them untimely.

Plaintiff also attempts to argue that the § 1983 claims in his first amended complaint, which were intentionally withdrawn from his second amended complaint, should relate back to the original complaint that he filed on November 30, 2023. (Dkt. #16, at 13.) However, where an amendment to an original pleading changes the party against whom a claim is asserted, as the first amended complaint plainly did in this case by adding Mahoney and Karls as new defendants to the lawsuit, the amendment relates back to the date of the original pleading only when the party "knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). This "mistake requirement" concerning the proper party's identity is essential for a relation back to apply. *King v. One Unknown Federal Correctional Officer*, 201 F.3d 910, 914 (7th Cir. 2000).

11

Here, plaintiff elected to file his original complaint against Dane County only, listing it as the sole "Defendant." (Dkt. #3-1, at ¶ 1.) There was no mistake concerning either Karls or Mahoney's identity or role in his claims for discrimination and retaliation. To the contrary, plaintiff was well aware of both potential defendants and simply *chose* not to pursue either, at least initially. As a result, plaintiff failed to name Karls and Mahoney as defendants in his original complaint or assert § 1983 claims against either of them until *after* the statute of limitations had expired. For this reason, as defendants have repeatedly pointed out, the joinder of Karls and Mahoney in the first amended complaint did not relate back to the filing of his original, explaining plaintiff's eventual abandonment of them in his second amended complaint. Thus, even if plaintiff were again proposing to add § 1983 claims against them once more, he still cannot evade the limitations bar. *See Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) ("[An] amendment with relation back is generally permitted in order to correct a misnomer of a defendant where the proper defendant is already before the court and the effect is merely to correct the name under which he is sued. But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.")(citation omitted). Absent any viable claim,[5] therefore, plaintiff's second amended complaint must be dismissed.

---

[5] Plaintiff argues further that Dane County remains an appropriate defendant because, as a municipality, it is required by Wis. Stat. § 895.46 to indemnify defendants Mahoney and Karls for actions taken during the course of their employment. (Dkt. #16, at 15-17.) Because plaintiff has failed to state a viable claim against Mahoney or Karls thus far, however, and the second amended complaint contains *no* claim against Dane County under Wis. Stat. § 895.46, the court does not address this argument further.

### III.   Leave to Amend

Nevertheless, plaintiff has requested yet another opportunity for leave to amend to correct his deficient pleadings. (Dkt. #16, at 17.) Defendants oppose another amendment, arguing persuasively that plaintiff has already failed to correct the deficiencies in his original complaint in two previous amendments, making leave to amend futile. To the extent that plaintiff wishes to assert § 1983 claims against defendants Karls and Mahoney, such an amendment would indeed be futile for reasons already discussed. Nor has plaintiff submitted a proposed amended complaint or specified any other potential claims.[6] Even so, the court will grant plaintiff one *final* opportunity for leave to file an amended complaint, as set forth below.

### ORDER

IT IS ORDERED that:

1. The motion to dismiss the second amended complaint filed by defendants County of Dane, David Karls, and David Mahoney (dkt. #10) is GRANTED.

2. Plaintiff Carlos Romero Oblitas's second amended complaint (dkt. #6) is DISMISSED WITHOUT PREJUDICE.

---

[6] The court also notes that plaintiff has been pursuing a case under the Wisconsin Fair Employment Act, as a precursor to a potential action against the defendants under Title VII of the Civil Rights Act, which is pending before the State of Wisconsin Department of Workforce Development's Equal Rights Division and the Equal Employment Opportunity Commission. (*See* O'Connor Decl. (dkt. #19) at ¶ 2.) That proceeding, which has already resulted in two findings of "no probable cause" to sue, appears far from being resolved and is also not taken up in this lawsuit. (Nelson Decl. (dkt. #22) at ¶ 2.)

3. Plaintiff may have until March 10, 2025, to file a third amended complaint. However, if he fails to do so within the time allowed, the court will assume that he no longer wishes to proceed and the case will be dismissed *with prejudice* under Fed. R. Civ. P. 41(b).

Entered this 6th day of February, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge